UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
IN RE GLACEAU VITAMINWATER       :
MARKETING AND SALES PRACTICE     :           SUGGESTION OF REMAND
LITIGATION                       :             11-md-2215 (DLI) (RML)
-------------------------------------------------------x
SCOTT COOK, individually and     :
on behalf of those similarly situated, and  :
NICHOLAS ARMADA,                 :
                                 :             11-cv-00925 (DLI) (RML)
              Plaintiffs,        :
                                 :
      -against-                  :
                                 :
THE COCA-COLA COMPANY, and       :
ENERGY BRANDS, INC.,             :
                                 :
              Defendants.        :
-------------------------------------------------------x
VIVIAN E. ST. JUSTE, TASHA M.    :
JOHNSON, JACKLYN FRANCIS,        :
MICHELLE WOODLEY,                :
ANGELINA FEOLA, and JOHN FEOLA,  :
                                 :             11-cv-00926 (DLI) (RML)
              Plaintiffs,        :
                                 :
      -against-                  :
                                 :
THE COCA-COLA COMPANY,           :
ENERGY BRANDS, INC., COCA-COLA   :
BOTTLING CO. OF THE VIRGIN ISLANDS,:
CULUSVI, INC. D/B/A COST-U-LESS, :
PSMT, LLC DBA PRICESMART, and    :
WORLD FRESH MARKET, LLC,         :
                                 :
              Defendants.        :
-------------------------------------------------------x
```

```
-----------------------------------------------------x
DAVID VOLZ, and                                      :
TIM VANDERCOOK,                                      :
                                                     :
                   Plaintiffs,                       :          11-cv-00927 (DLI) (RML)
                                                     :
        -against-                                    :
                                                     :
COCA COLA COMPANY, and                               :
ENERGY BRANDS INC.,                                  :
                                                     :
                   Defendants.                       :
-----------------------------------------------------x
AHMED KHALEEL, individually and                      :
on behalf of those similarly situated,               :
                                                     :
                   Plaintiff,                        :          11-cv-00996 (DLI) (RML)
                                                     :
        -against-                                    :
                                                     :
COCA COLA COMPANY, and                               :
ENERGY BRANDS INC.,                                  :
doing business as GLACEAU,                           :
                                                     :
                   Defendants.                       :
-----------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

On February 8, 2011, the Judicial Panel on Multidistrict Litigation (the "Panel") designated this Court as the transferee court for federal cases alleging deceptive labeling and marketing of defendants' product, "vitaminwater." There are no pending federal claims in any of the consolidated cases. Pursuant to Rule 10.1(b) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the undersigned transferee judge submits this Suggestion of Remand, recommending that the Panel remand the cases listed below to the indicated courts of proper jurisdiction (the "transferor courts"), and providing information of potential assistance to the transferor courts.

## I.      Procedural History

In January 2009, plaintiff Batsheva Ackerman ("Ackerman"), a New York resident, commenced a purported class action in this district, alleging the deceptive labeling and marketing of vitaminwater, which defendants promote as a "nutrient-enhanced water beverage." On May 26, 2009, Ackerman filed an amended complaint, adding as named plaintiffs Ruslan Antonov, James Koh, and Jerrad Pelkey,[1] all California residents, and contending, *inter alia*, that defendants' alleged deceptive practices violate California and New York consumer protection laws.[2]

On June 22, 2009, defendants moved to dismiss the complaint on the grounds of federal preemption and failure to state a claim.  On July 21, 2010, after full briefing and oral argument, this Court granted in part and denied in part defendants' motion.  See Ackerman v. Coca–Cola Co., No. 09 CV 0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010).[3]  On August 27, 2010, defendants answered plaintiffs' Second Amended Complaint.

In November 2010, with the Ackerman plaintiffs' support, defendants moved the Panel for pre-trial consolidation of this case with two other vitaminwater cases: one that was filed in

---

[1]   By stipulation dated March 15, 2010, Mr. Pelkey voluntarily dismissed his claims with prejudice.

[2]   Upon learning of defendants' intent to seek MDL consolidation in the Northern District of California, the California plaintiffs voluntarily dismissed their three separate cases, which were then pending in the Northern and Eastern Districts of California, and joined the existing Ackerman case in this Court.  Thus, in September 2009, the Panel denied defendants' motion for pretrial consolidation in the Northern District of California.  In October 2009, plaintiffs again amended their complaint to, *inter alia*, add as named plaintiffs two New Jersey residents, as well as the claim that defendants' practices violated New Jersey law.  The New Jersey plaintiffs are no longer involved in this action.

[3]   The Court identified the open question in this case as whether a reasonable consumer would find vitaminwater's labeling and marketing misleading or deceptive under state law.  Ackerman, 2010 WL 2925955, at *16.

the Southern District of Florida and a second that was filed in the Superior Court of the Virgin Islands and then removed to federal court.  On February 8, 2011, the Panel granted that motion pursuant to 28 U.S.C. § 1407 and transferred the Florida and Virgin Islands cases to this Court for coordinated or consolidated pre-trial proceedings.  On February 25 and March 2, 2011, the Panel granted defendants' request for transfer of two additional vitaminwater cases: one from the Northern District of Illinois and one from the Southern District of Ohio that had been removed from Ohio state court.  The Florida, Virgin Islands, Illinois, and Ohio plaintiffs all have opposed consolidation.

Once the cases were consolidated, all the parties agreed to be bound by a Stipulated Protective Order, originally entered on December 3, 2010.  The parties also agreed to a case management order and proceeded to engage in extensive discovery related to class certification, including the depositions of the named plaintiffs and the exchange of expert reports. The parties fully litigated several discovery disputes in this Court, each of which has been resolved.[4]

The parties completed briefing of plaintiffs' motions for class certification in September 2012, and the Court heard oral argument on October 11, 2012.[5]  (See Transcript of Oral Argument, dated Oct. 11, 2012 ("Tr."), ECF No. 131.)  The parties have since filed numerous supplemental submissions regarding class certification.

Having reviewed the parties' submissions thoroughly and having considered their arguments carefully, this Court concludes that the transferor courts would be uniquely well-suited to rule on the issues presented in the class certification motions, and that resolving those

---

[4]  This Court has made a significant number of rulings throughout the course of this MDL.  This Order does not attempt to mention or detail all of those rulings, or suggest the extent to which any particular ruling is applicable to future proceedings in these cases.

[5]  Oral argument took place before United States Magistrate Judge Robert M. Levy, to whom the class certification motions were referred for a report and recommendation.

issues in this Court would not advance the efficiencies sought by the Panel.  Many of the issues require an interpretation or analysis of state law, which, in some instances, is unsettled.  Indeed, all of the claims in these cases arise under state law, and conduct that would justify class certification under one state's consumer protection law may, or may not, support class certification under another state's law.

## DISCUSSION

### I.    Pending Motions For Class Certification

As background, the plaintiffs collectively identify the "central issue" in this case as "whether Defendants' uniform labeling of vitaminwater products – including the name 'vitaminwater' – is deceptive to a reasonable consumer."  (Master Mem. of Law in Support of Pls.' Motion for Class Certification, dated June 29, 2012, ECF No. 71, at 1–2.)   More specifically, plaintiffs contend that:

> Defendants deceptively promote vitaminwater as an alternative beverage to water and soft drinks that will assist consumers in maintaining healthy dietary practices.   The product name (vitaminwater), description (Nutrient Enhanced Water Beverage), and slogans such as "vitamins+water=all you need" and "vitamins+water=what's in your hand" that appear on all vitaminwater labels,[6] together with flavor names that are associated with specific purported health benefits, mislead consumers to believe that vitaminwater is simply water fortified with nutrients that will provide certain stated health benefits rather than just another sugary soft drink.

(Id. at 2–3.)

---

[6]   The name "vitaminwater" appeared on the label of every vitaminwater product sold to consumers during the relevant class periods, as did the description of vitaminwater as a "Nutrient Enhanced Water Beverage."  (Stipulation of Certain Marketing Statements, dated Feb. 17, 2012, Ex. B, ECF No. 50.)   The phrase "vitamins+water =what's in your hand" appeared on vitaminwater product labels until 2004.  (Id.)  It appears that the phrase "vitamins + water = all you need" only appeared on certain flavors.

It is undisputed that all vitaminwater bottles have a three–part label. The left panel discloses each product's sugar and vitamin content, among other information, and the right panel contains the ingredient list, which also discloses the amount of sugar and the various included vitamins for each flavor. (<u>See</u> Nesser Decl., Ex. B.) Plaintiffs do not claim that any of the ingredient or nutritional information on the vitaminwater labels has ever been inaccurate or incomplete.

In its decision on defendants' motion to dismiss, this Court stated that "[t]he fact that the actual sugar content of vitaminwater was accurately stated in an FDA–mandated label on the product does not eliminate the possibility that reasonable consumers may be misled." <u>Ackerman</u>, 2010 WL 2925955, at *16. The Court explained that "the presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing" and that "even reasonable consumers may not read the nutritional label prior to every purchase of a new product." <u>Id.</u>

All of the plaintiffs have moved for class certification, which of course necessitates an analysis of each of the threshold requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). In addition, plaintiffs seeking certification of claims for injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) must demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs seeking monetary relief, on the other hand, must satisfy the

prerequisites of both subsection (a) and (b)(3) of Rule 23 by demonstrating that questions of law or fact common to the members of the proposed class "predominate over any questions affecting only individual members," and that a class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Whether seeking certification under Rule 23(b)(2) or 23(b)(3),[7] the plaintiffs bear the initial burden of proving that their putative class action meets Rule 23's requirements. Fed. R. Civ. P. 23. Under the Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011), a plaintiff must provide "significant" and "convincing" proof that satisfies the Rule 23 requirements. Once the plaintiffs have made such a showing, the burden of proof is on the defendants to demonstrate otherwise. See Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997)); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202–03 (2d Cir. 2008).

Defendants naturally argue that there is "wide variation in consumer expectations and understanding" (Defs.' Mem. of Law in Opposition to Pls.' Master Motion for Class Cert., dated Aug. 24, 2012, ECF No. 92, at 2), and that, therefore, plaintiffs' claims of reliance, causation, and injury are not susceptible to generalized, class-wide proof. In response, each of the purported plaintiff classes maintains that the record demonstrates a uniformity of consumer experience, and that, under their respective state laws, they need only show that the alleged misrepresentations would be materially misleading to a reasonable consumer. Thus, the class certification motions hinge, at least in part, on whether each substantive state law supplies an

---

[7]  Where a class is certified pursuant to Rule 23(b)(2), no notification is required for absent class members; however, such notice is required if certification occurs under subsection (b)(3). Fed. R. Civ. P. 23(c)(2).

objective or subjective consumer standard.  Other state-specific concerns have been raised as well.

I will outline each transferor case, and the outstanding state law issues, in turn.

A.    Ohio

The proposed Ohio class consists of all consumers who purchased vitaminwater in the state of Ohio between June 7, 2007 and the present.[8]  The Ohio plaintiffs allege claims for violations of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. §§ 1345.01-1345.13,[9] and the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code Ann. §§ 4165.01-4165.04, and for unjust enrichment, promissory estoppel, and negligent misrepresentation under Ohio law.

Plaintiffs bringing class actions under the OCSPA are subject to the statute's class action notice requirement.  Under the OCSPA, consumers may seek relief in a class action only if the defendant was sufficiently on notice that its conduct was deceptive or unconscionable under the statute at the time it committed the alleged acts.  Ohio Rev. Code Ann. § 1345.09(B) (West 2012); Marrone v. Phillip Morris USA, Inc., 110 Ohio St. 3d 5, 2006–Ohio–2869, 850 N.E.2d 31, at ¶ 1.  Plaintiffs bringing claims on behalf of a class must demonstrate that either: (1) the alleged violation is an act or practice that was declared to be deceptive or unconscionable by a

---

[8]  I note that the Ohio Consumer Sales Practices Act ("OCSPA") typically does not apply to consumers who reside outside the state of Ohio.  Loreto v. Procter & Gamble Co., 737 F. Supp. 2d 909, 917 (S.D. Ohio 2010).  It will be for the transferor court to decide whether to limit the class accordingly.

[9]  The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."  Ohio Rev. Code Ann. § 1345.02(A) (West 2007).  "Plaintiffs bringing OCSPA claims must allege that the defendant performed an act or omission that was unfair or deceptive, and that the alleged act 'impacted [the plaintiffs'] decision to purchase the item at issue.'"  In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012) (quoting Temple v. Fleetwood Enters., Inc., 133 F. App'x 254, 265 (6th Cir. 2005).

rule adopted by the Attorney General before the consumer transaction on which the action is based, or (2) the alleged violation is an act or practice that was determined by a court to violate the OCSPA and the court's decision was available for inspection before the transaction took place.  Ohio Rev. Code Ann. § 1345.09(B). The alleged conduct must be "substantially similar" to an act or practice previously declared to be deceptive under the OCSPA in order for the action to proceed as a class.  Marrone, 110 Ohio St. 3d at ¶ 2.[10]

Ohio courts have held that, in order to bring a claim on behalf of a putative class, a plaintiff must identify in his or her complaint the rule or case that satisfies section 1345.09(B)'s notice requirement.  See Johnson v. Microsoft Corp., 155 Ohio App. 3d 626, 2003–Ohio–7153, 802 N.E.2d 712, at ¶ 20 (1st Dist.) (dismissing a plaintiff's OCSPA class action because she failed to plead the requisite notice elements under section 1345.09(B)), aff'd on other grounds, 106 Ohio St. 3d 278, 2005–Ohio–4985, 834 N.E.2d 791.  If a plaintiff fails to identify a rule or case in his or her complaint that satisfies section 1345.09(B), dismissal of the claim as a class action is proper and the plaintiff may proceed in his or her individual capacity.  See In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d 801, 869 (S.D. Ohio 2012); St. Clair v. Kroger Co., 581 F. Supp. 2d 896, 901 (N.D. Ohio 2008); Volbers–Klarich v. Middletown Mgmt., Inc., 125 Ohio St.

---

[10]   Specifically, a claim may be asserted under the OCSPA on behalf of a class of consumers only:

> Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted [by the Ohio Attorney General] before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code. . . .

Ohio Rev. Code Ann. § 1345.09(B) (West 2012).

3d 494, 2010–Ohio–2057, 929 N.E.2d 434, at ¶ 33.  Federal district court cases cannot supply the requisite notice under section 1345.09(B).  See Kline v. Mortg. Elec. Sec. Sys., No. 3:09 CV 408, 2010 WL 6298271, at *6 (S.D. Ohio Dec. 30, 2010) ("[T]he Court cannot logically conclude that by referring to decisions of 'a court of this state,' the Ohio legislature intended to allow a federal court sitting in Ohio to define the parameters of 'deceptive or unconscionable' practices under Ohio's Consumer Sales Practices Act.").

In their complaint, the Ohio plaintiffs do not identify any rule or decision finding the defendants' conduct, or similar conduct, deceptive.  Rather, they maintain that the OCSPA does not mandate a pleading requirement, and, in their memoranda of law in support of their motion for class certification, the Ohio plaintiffs cite two cases that they claim demonstrate prior notice: Brown v. Am. Health Institute, Franklin App. No. 78 CV 0401926, Ohio Atty. Gen. P.I.F. No. 10000175 (Nov. 5, 1978), and Cordray v. The Dannon Co., Franklin Cty. Common Pleas Court, No. 10 12-18225, Ohio Atty. Gen. P.I.F. No. 10002919 (Dec. 22, 2010).  According to defendants, these two case citations do not satisfy OCSPA's notice requirements.  Whether or not they do, and whether any deficiency could be corrected, is a question best left to the transferor court, with its superior expertise and familiarity in the application of Ohio law and precedent.

The other Ohio statute at issue, the ODTPA, proscribes certain "deceptive trade practices" such as passing off goods or services as those of another and causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services.  Ohio Rev. Code Ann. § 4165.02(A)(1)–(2) (West 2011).  Section 4165.03 of the ODTPA confers standing on a "person who is likely to be damaged by a person who commits a deceptive trade practice" or a "person who is injured by a person who commits a deceptive trade

practice." Id. § 4165.03(A)(1) & (2).  Despite this language, there is a split of authority on the question of consumer standing to bring a claim under the ODTPA.  See In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d at 873–74 (interpreting the ODTPA as prohibiting consumers from bringing a private cause of action) (citing Dawson v. Blockbuster, Inc., 8th Dist. No. 86451, 2006 WL 1061769, at *4 (Ohio Ct. App. Mar. 16, 2006), cert. denied, 110 Ohio St. 3d 1442, 2006–Ohio–3862, 852 N.E.2d 190 (Ohio 2006)); Bower v. Int'l Bus. Machs., Inc., 495 F. Supp. 2d 837, 843 (S.D. Ohio 2007) (holding that individual consumers have standing under the ODTPA); Glassner v. R.J. Reynolds Tobacco Co., No. 5:99 CV 0796, 1999 WL 33591006, at *6 (N.D. Ohio June 29, 1999) (explaining that the ODTPA "governs conduct between commercial entities, not between a commercial entity and a consumer.").  The Ohio Supreme Court has not ruled on this issue.[11]  Given the unsettled state of Ohio law, and the fact that this case will return to Ohio for final resolution at any rate, it would make little sense for this Court to weigh in on the question of whether an Ohio class may be certified under the ODTPA.

B.    The Virgin Islands

The proposed Virgin Islands class consists of all residents of the United States Virgin Islands who purchased vitaminwater since its distribution in the Virgin Islands.[12]  The Virgin Islands plaintiffs' claims arise under the Virgin Islands Unfair and Deceptive Trade Practices Act, V.I. Code Ann. tit. 12A §§ 101–110 (1973), the Virgin Islands Consumer Fraud and

---

[11]  In McKinney v. Bayer Corp., 744 F. Supp. 2d 733, 752 (N.D. Ohio 2010), the court certified this issue to the Ohio Supreme Court, explaining that it was "particularly difficult to discern what that high Court would do."  However, the plaintiff voluntarily dismissed his ODTPA claim and the issue never reached to the Ohio Supreme Court.

[12]  I note, however, that the statute of limitations for claims under the Virgin Islands Unfair and Deceptive Trade Practices Act is two years.  See V.I. Code Ann. tit. 12A § 108(j) (2012) ("An action under this section must be brought within two years after the occurrence of a violation of this chapter. . . .").

Deceptive Business Practices Act,[13] V.I. Code Ann. tit. 12A §§ 301–335 (2006), and Virgin Islands common law.

"Under the Virgin Islands deceptive trade practices law, 'no person shall engage in any deceptive or unconscionable trade practice in the sale . . . of any consumer goods or services. . . .'" Knox v. Quest Diagnostics, Inc., No. 2006–97, 2012 WL 426726, at *5 (D.V.I. Feb. 10, 2012) (quoting Island Insteel Sys. v. Waters, 296 F.3d 200, 212 (3d Cir. 2002) (citing V.I. Code Ann. tit. 12A § 101)). In non-class actions, a consumer who suffers a loss as a result of a violation of § 101 may recover actual damages or $250, whichever is greater. V.I. Code Ann. tit. 12A § 108(b). However, under § 108(c), "[w]hether a consumer seeks or is entitled to recover damages or has an adequate remedy at law, he may bring a class action for declaratory judgment, an injunction, and appropriate ancillary relief, except damages, against an act or a practice that violates this chapter." V.I. Code Ann. tit. 12A § 108(c) (emphasis added).[14] The statute also requires a showing of an impact on the public interest. See Four Winds Plaza Corp. v. Caribbean Fire & Assocs., Inc., No. 2005-201, 2007 WL 1795734, at *2 (D.V.I. Apr. 18, 2007) (citing V.I. Code Ann. tit. 12A, § 108).

---

[13] This statute expressly provides that courts construing it must give consideration to case law interpreting the Federal Trade Commission Act, 15 U.S.C. § 45:

> It is unlawful for any person to engage in unfair methods of competition or unfair or deceptive trade acts or practices in the conduct of any trade or commerce. In construing this chapter, consideration must be given to the interpretations of the Federal Trade Commission and the federal courts relating to 15 U.S.C. 45 at the time of enactment of this chapter.

V.I. Code Ann. § 304.

[14] It thus appears that the purported Virgin Islands class would only be entitled to declaratory and injunctive relief under this statute.

As the Virgin Islands plaintiffs note, the Supreme Court of the Virgin Islands first started issuing opinions in 2007.  See History of the Court, Supreme Court of the United States Virgin Islands, http://www.visupremecourt.org/Know_Your_Court/History_of_the_Court/index.asp (last visited July 10, 2013).  Therefore, the Virgin Islands does not have a large body of precedent, and, to date, there has not been one opinion on class certification.  Nor is there any case law interpreting the Virgin Islands Unfair and Deceptive Trade Practices Act so as to indicate whether individual reliance is a necessary element of a consumer protection claim,[15] or whether deceptive labeling of a beverage would satisfy the "impact on the public interest" requirement.  In other words, this case appears to raise issues of first impression under Virgin Islands law.  The Virgin Islands plaintiffs, therefore, have proposed certifying unspecified questions of law to the Virgin Islands Supreme Court.[16]

---

[15]  The statute defines a "deceptive trade practice" as "any false or misleading oral or written statement, visual description or other representation of any kind made in connection with the same of consumer goods or services which has the capacity, tendency or effect of deceiving or misleading consumers."  V.I. Code Ann. tit. 12A § 102(a).  According to the Virgin Islands plaintiffs, this is an objective "reasonable consumer" standard.  (Tr. at 137.)  However, there is no case law interpreting this section of the statute in the class action context or otherwise.

[16]  Where the outcome of a suit in federal court turns on an unresolved issue of local law, the United States Supreme Court has encouraged federal courts to seek guidance from the highest court of the appropriate jurisdiction, if that court has adopted procedures for accepting certified questions of law.  See Lehman Bros. v. Schein, 416 U.S. 386, 390–91 (1974).  See also Banks v. Int'l Rental & Leasing Corp., 680 F.3d 296, 299 (3d Cir. 2012) (certifying unsettled question of local law to the Virgin Islands Supreme Court).

The Supreme Court of the Virgin Islands has adopted rules establishing a procedure to decide certified questions of Virgin Islands law.  See V.I. S. Ct. R. 38.

> The Supreme Court of the Virgin Islands may answer questions of law certified to it by a court of the United States if there is involved in any proceeding before the certifying court a question of law which may be determinative of the cause then pending in the certifying court and concerning which it appears there is no controlling precedent in the decisions of the Supreme Court. While answering a certified question is not an adjudicative

Defendants object to certification and argue that the Virgin Islands plaintiffs cannot satisfy the elements of Rule 23. However, whether the Virgin Islands plaintiffs can satisfy the requirements of local law, and whether certification is advisable in order to reach that determination, are questions best left to the transferor court. See Conner v. Alfa Laval, Inc., 842 F. Supp. 2d 791, 794 n.4 (E.D. Pa. 2012) ("When state law is unsettled and the Court is unable to predict its resolution with reasonable certainty, the Court typically remands to the transferor court for a ruling under the particular state's law.")

C.     Florida

The purported Florida class consists of all Florida residents who purchased vitaminwater at any time during the applicable statute of limitations. The Florida plaintiffs bring their claims under the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla. Stat. § 501.202. "[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (citing Chicken Unlimited, Inc. v. Bockover, 374 So. 2d 96, 97 (Fla. Dist. Ct. App. 1979)).

According to the Court of Appeals for the Eleventh Circuit, the FDUTPA does not require individualized proof of subjective reliance. See Fitzpatrick v. Gen. Mills, Inc., 635 F. 3d 1279, 1283 (11th Cir. 2011) (explaining that a plaintiff asserting a FDUTPA claim "need not show actual reliance on the representation or omission at issue") (citation omitted); see also State v. Commerce Commercial Leasing, LLC, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007) ("A

function, this Court possesses the inherent power to answer certified questions as the highest local court in this jurisdiction.

Banks v. Int'l Rental & Leasing Corp., 55 V.I. 967, 972 (2011) (citing the Rules of the Virgin Islands Supreme Court, V.I. S. Ct. R. 38(a).)

deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.") (quotation omitted); Davis v. Powertel, Inc., 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.").

Thus, in Fitzpatrick, the court upheld class certification for claims about the alleged digestive health benefits of Yo-Plus yogurt.  The court held that, under the FDUTPA, "'whether that allegedly deceptive conduct would deceive an objective reasonable consumer [was a] common issue[ ] for all the putative class members, amenable to classwide proof.'"  Fitzpatrick, 635 F.3d at 1283 (quoting Fitzpatrick v. General Mills, Inc., 263 F.R.D. 687, 699 (S.D. Fla. 2010)).  It went on to explain that, "should the class prevail on the liability issue, each putative class member would only need to show that he or she paid a premium for YoPlus to be entitled to damages under the FDUTPA."  Id.

However, there appears to be a split in the Florida courts regarding the interaction of the reliance and causation elements of an FDUTPA claim, and some Florida courts have required that plaintiffs present individualized proof in order to satisfy the FDUTPA's causation element. See, e.g., Miami Auto. Retail, Inc. v. Baldwin, 97 So. 3d 846, 857 (Fla. Dist. Ct. App. 2012) (noting that the "FDUTPA requires proof of each individual plaintiff's actual (not consequential) damage and defendant's causation of damage"); Rollins, Inc., 951 So. 2d at 871–75 (reversing the trial court's certification of a class of purchasers of termite-extermination services and finding that class-wide proof of causation would be impossible; rejecting plaintiff's argument that the "diminished market value" of the service due to false advertising could be proven on a

class-wide basis); <u>Hutson v. Rexall Sundown, Inc.</u>, 837 So. 2d 1090, 1092–93 (Fla. Dist. Ct. App. 2003) (holding that the typicality requirement was not satisfied where some putative class members had no FDUTPA claims because they were not deceived and, therefore, suffered no damages).[17]

The Florida Supreme Court has not addressed this issue directly, but at least one federal court recently disagreed with <u>Fitzpatrick</u>'s interpretation of the FDUTPA on the ground that "causation typically requires individualized proof." <u>In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.</u>, Nos. 05 C 4742, 05 C 4744, 2012 WL 1015806, at *10 (N.D. Ill. Mar. 22, 2012).[18]  Rather than engage in the risky exercise of predicting whether the Florida Supreme

---

[17]   The defendants also rely heavily on <u>Tire Kingdom, Inc. v. Dishkin</u>, 81 So. 3d 437, 446-47 (Fla. Dist. Ct. App. 2011).  (<u>See</u> Defs.'  Mem. of Law in Opposition to Florida Pls.' Motion for Class Certification, dated Aug. 2012.)  I note that the decision in <u>Dishkin</u> was quashed by the Florida Supreme Court in <u>Soper v. Tire Kingdom, Inc.</u>, __So. 3d __, 2013 WL 264441, 38 Fla. L. Weekly S37 (Fla. Jan 24, 2013), on grounds unrelated to an interpretation of the FDUPTA, and is no longer good law.

[18]   The court in <u>Sears</u> distinguished <u>Fitzpatrick</u> from the case before it – which involved "thousands of different Craftsman tools" and many different advertisements –  on the ground that "<u>Fitzpatrick</u> involved one product, Yo–Plus, and the allegedly false claim that Yo–Plus had a unique digestive health benefit was 'communicated in one way or another to every purchaser of Yo–Plus in Florida.'"  <u>Sears</u>, 2012 WL 1015806, at *10 (quoting <u>Fitzpatrick v. Gen. Mills, Inc.</u>, 263 F.R.D. 687, 694 (S.D. Fla. 2011)).  Nevertheless, it concluded that:

> It is our view that the Florida Supreme Court would take the same approach as recent Florida appellate court decisions and require a plaintiff to show that the alleged misrepresentation actually caused him harm.  To do otherwise in the name of the general principle that the FDUTPA does not require reliance would, in effect, remove its causation requirement.  Each plaintiff in [the] putative class will have to show that the alleged "Made in USA" misrepresentation caused him or her damage, which would necessitate individualized proof.  Accordingly, the proposed Florida class suffers from the same problems we previously identified.  It is overbroad because it contains a great many individuals who were not deceived and could not have been injured, and plaintiff has not shown that his claim is typical of those of the putative class.  In addition, individual questions of

Court would adopt the approach of <u>Fitzpatrick</u> or that of <u>Sears</u>, this Court finds that this issue is best left to the transferor court, with superior expertise and familiarity in the application of Florida law.[19]

     D.    <u>Illinois</u>

The Illinois class consists of all Illinois residents who purchased vitaminwater at any time from December 2007 to the present.   The Illinois class brings its claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann., 505/2 (1993), which makes it unlawful to use deception or fraud in the conduct of trade or commerce,[20] and for unjust enrichment under Illinois law.

The ICFA provides a right of action for a person who suffers "actual damage" as a result of a violation.   815 Ill. Comp. Stat. Ann. 505/10a(a).   The actual damage element of a private ICFA action requires that the plaintiff suffer "actual pecuniary loss."   <u>Mulligan v. QVC, Inc.</u>, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008).   Actual loss may occur if the seller's deception

---

> causation will continue to predominate despite the FDUTPA's lack of a reliance requirement.

<u>Id.</u> at *11.

[19]  Whether or not it would be advisable to certify this question to the Florida Supreme Court is also an issue best reserved for the transferor court.

[20]  The statute provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of [specified practices] in the conduct of any trade or commerce are hereby declared unlawful . . . ."

815 Ill. Comp. Stat. Ann. 505/2 (footnotes omitted).

deprives the plaintiff of "the benefit of her bargain" by causing her to pay "more than the actual value." Id. at 1197–98.[21]

It is well-established that a claim under the ICFA contains five elements: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 856 (Ill. 2005) (citation omitted). Furthermore, "in a case alleging deception under the [Consumer Fraud] Act, it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation." Id. at 861 (citation omitted). "Satisfaction of this element requires individualized proof." Clark v. Experian Information Solutions, Inc., 256 Fed. App'x 818, 821 (7th Cir. 2007) (upholding denial of class certification because of the need for individualized findings under the IFCA).[22]

In Oshana v. Coca–Cola Co., 472 F.3d 506 (7th Cir. 2006), the court considered and rejected the argument that per se deceptiveness absolves a plaintiff from making individualized proof of proximate cause under the ICFA. See id. at 513–15. It also concluded that a class of

---

[21]   In Mulligan, defendant QVC listed its actual sales prices next to substantially higher but allegedly fictitious "retail values," creating the false impression that customers were getting a better deal than they really were. Mulligan, 888 N.E.2d at 1192-93. A customer lured in by this comparative pricing sued QVC under the ICFA, but the Illinois Appellate Court concluded that she had not suffered actual damages. The plaintiff "agreed to purchase . . . items for a certain price" and could not show "that the value of what she received was less than the value of what she was promised." Id. at 1197.

[22]   The plaintiffs in Clark claimed that an online credit protection service concealed the need to timely cancel long-term contracts if a subscriber wished to discontinue service. The court held that, while the notice was not prominently displayed, there was some disclosure on the Internet website, necessitating individual proofs of deceptiveness, reliance and damages under the ICFA. Clark, 256 Fed. App'x at 822-23.

consumers who bought fountain Diet Coke was not ascertainable.  Id. at 514–15 (citing 815 Ill.

Comp. Stat. 505/10a; Oliveira v. Amoco Oil Co., 776 N.E.2d 151, 160 (Ill. 2002)).  See also

Siegel v. Shell Oil Co., 612 F.3d 932, 935–36 (7th Cir. 2010) (individualized inquiries regarding

"why a particular plaintiff purchased a particular brand of [the product]" were necessary to

establish harm to each class member under the ICFA and, thus, common issues could not

predominate); Lipton v. Chattem, No. 11-C-2952, 2013 WL 489147, at *5 (N.D. Ill. Feb. 8,

2013) (deceptive labeling and resulting damages could not be proved on a classwide basis where

proposed class included individuals who were not deceived, or were deceived but would have

purchased the product anyway); Korsmo v. Am. Honda Motor Co., No. 11 C 1176, 2012 WL

1655969, at *5 (N.D. Ill.  May 10, 2012) (allegedly misleading and deceptive use of the phrase

"Honda Certified Used Cars" did not support class certification because "individual inquiries

would be necessary to determine each buyer's motivations for buying a Honda Certified Used

Vehicle and which buyers, if any, were deceived by the use of the phrase[.]"); Kitzes v. Home

Depot U.S.A., Inc., 872 N.E.2d 53, 61-62 (Ill. App. Ct. 2007) (denying class certification on the

ground that individual inquiries were necessary to identify whether proposed class members

actually purchased the product at issue from Home Depot); Barbara's Sales, Inc. v. Intel Corp.,

879 N.E.2d 910, 927 (Ill. App. Ct. 2007) (explaining that plaintiffs in a class action brought

under the ICFA must prove that "each and every consumer who seeks redress actually saw and

was deceived by the statements in question" and reversing class certification because the

plaintiffs could not demonstrate that they were, as a class, deceived by defendants'

representations concerning their computers).

     The Illinois plaintiffs reject the notion that individual reliance is a necessary element of

their ICFA claim.  In fact, Illinois courts have certified classes asserting violations of the ICFA,

where the defendant engaged in "uniform" conduct toward the class, and the successful adjudication of the named plaintiff's claims would establish a right to recovery for all class members.  See, e.g., S37 Mgmt., Inc. v. Advance Refrigeration Co., 961 N.E.2d 6, 16 (Ill. App. Ct. 2011) (defendant's uniform collection of a "government processing" charge in every invoice justified class certification); P.J.'s Concrete Pumping Serv., Inc. v. Nextel W. Corp., 803 N.E.2d 1020, 1030 (Ill. App. Ct. 2004) ("The primary factual issue in this case is a uniform billing practice that allegedly violated the Consumer Fraud Act in the same manner as to all class members.  The propriety of such a uniform practice is amendable to being resolved in a class action.").  See also Phillips v. Ford Motor Co., No. 99-L-1041, 2003 WL 23353492, at *5 n.7 (Ill. Cir. Ct. Sept. 15, 2003) (explaining that, although causation is one of the elements of a claim under the ICFA, there is no mandate "that every attempt to certify a consumer fraud class must fail due to the need for individualized proximate cause hearings" and "innumerable ICFA class actions have been certified (and upheld) without requiring individualized showings of proximate causation.")  Moreover, courts are to liberally construe the ICFA.  Connick v. Suzuki Motor Co., 675 N.E. 2d 584, 594 (Ill. 1996).

In short, whether or not the alleged misrepresentations in this case were sufficiently uniform to satisfy Illinois law is a question best reserved for the transferor court.

## II.    Pending Motions Regarding Expert Reports

The plaintiffs have moved to exclude the expert reports of Stephen G. Swisdak, Carol A. Scott, Ph.D., and Elizabeth Applegate, Ph.D., submitted in opposition to plaintiffs' motions for class certification.   Mr. Swisdak is a historian who was asked to conduct research into "knowledge widely available to the public in certain media areas concerning the sugar content,

calorie content, and recommended serving size of vitaminwater."[23]  (See Expert Report of Stephen G. Swisdak, attached as Ex. N to the Declaration of Isaac Nesser, Esq., dated Aug. 24, 2012 ("Nesser Decl.").)  Dr. Scott is an expert on consumer surveys, who was asked to conduct research into commercial information about vitaminwater and consumers' reasons for purchasing it.[24]  (See Expert Report of Carol A. Scott, Ph.D., attached as Ex. L to the Nesser Decl.)  Dr. Applegate is an expert on nutrition and is a tenured faculty member at the University of California, Davis.[25]  (See Expert Report of Elizabeth Applegate, Ph.D., attached as Ex. K to the Nesser Decl.)  Whether or not these reports are relevant to the motions for class certification, or should be excluded for other reasons,[26] can be determined by each of the transferor courts.

## CONCLUSION

In sum, the pending motions confirm that a suggestion of remand is appropriate at this time.  While the substance of the motions undeniably overlaps in some respects, the motions raise many case specific state law issues, which can best be resolved by courts in the states where

---

[23]  In his report, Mr. Swisdak concludes that, in his "expert historical opinion," the "average consumer had multiple opportunities, through multiple media formats in both national and local media sources, to be exposed to information about the sugar and caloric content of vitaminwater, as well as the fact that a bottle of vitaminwater contained 2 ½ servings.  (Nesser Decl., Ex. N.)

[24]  Dr. Scott's survey sought to determine why consumers purchase vitaminwater, what attributes about the product are most important to them, and consumers' perceptions of marketing on the label and in other promotional materials.  The survey also obtained information on vitaminwater pricing and consumers' awareness of the prevalence of vitaminwater advertising on television, magazines, newspapers, and on social media such as Facebook.  (Nesser Decl., Ex. L.)

[25]  Dr. Applegate offers the opinions that: (1) the "majority of individuals seeking healthier food and beverage choices utilize the Nutrition Facts Panels and ingredients lists on product labels," and (2) notions of what is "healthy" vary, and what can be healthy for one person might not be for another.  (Nesser Decl., Ex. L.)

[26]  Plaintiffs' primary argument, at least with respect to Dr. Scott, is that this expert evidence goes to the merits of this case and should not be considered on a motion for class certification.  If the Court intends to consider it, plaintiffs request further discovery.  (See, e.g., Tr. at 170–80.)

plaintiffs' claims arose.[27]  The fact that the plaintiffs' claims have some degree of commonality is not a sufficient reason to keep the tag-along actions here.  This Court does not believe it has obtained "any particular expertise . . . from supervising this litigation" that would render it more capable than the transferor courts of disposing of the pending motions.  See In re Air Crash Disaster Near Dayton, Ohio, 386 F. Supp. 908, 909 (J.P.M.L. 1975) (per curiam); accord, e.g., In re King Res. Co. Sec. Litig., 458 F. Supp. 220, 221 (J.P.M.L. 1978) (per curiam).

Moreover, while the pending motions for class certification have been fully briefed and argued, "it is not contemplated that a Section 1407 transferee judge will necessarily complete all pre-trial proceedings in all actions transferred and assigned to him [or her] by the Panel."  In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig., MDL No. 1945, 2011 WL 1046162, at *4 (S.D.N.Y. Mar. 22, 2011) (suggesting remand of actions transferred from Texas where remaining issues involved only application of Texas law.).[28]

---

[27]  The defendants raise numerous additional issues with respect to the plaintiffs' various state law claims.  This suggestion of remand does not purport to identify all of them.

[28]  In fact, courts routinely suggest remand even where there are pending dispositive motions, see, e.g., In re State St., 2011 WL 1046162, at *4–6 (suggesting remand notwithstanding pending motions for summary judgment); In re Ford Motor Co. Bronco II Prod. Liab. Litig., MDL No. 991, 1998 WL 308013, at *2 & n.11 (E.D. La. June 8, 1998) (same).  The Panel has repeatedly remanded cases under such circumstances.  See, e.g., In re Baseball Bat Antitrust Litig., 112 F. Supp. 2d 1175, 1177 (J.P.M.L. 2000) (remanding cases despite pending motions to dismiss in transferee court); In re Evergreen Valley Project Litig., 435 F. Supp. 923, 924 (J.P.M.L. 1977) (per curiam) (same).

Based on the foregoing, and all the files, records, and proceedings herein, the undersigned respectfully suggests to the Panel that the below–listed actions be remanded to their original courts:

| Case Name | EDNY Case No. | Transferor Court |
|---|---|---|
| *Cook, et al. v. Coca-Cola Co., et al.* | 11-cv-925 | S.D. Fla. |
| *St. Juste, et al. v. Coca-Cola Co., et al.* | 11-cv-926 | D. Virgin Islands |
| *Volz, et al. v. Coca-Cola Co., et al.* | 11-cv-927 | S.D. Ohio |
| *Khaleel v. Coca-Cola. Co., et al.* | 11-cv-996 | N.D. Ill. |

Dated: Brooklyn, New York
      July 10, 2013

_____/s/_____
DORA L. IRIZARRY
United States District Judge

-23-